UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAMIL MESSIH,

    Plaintiff,

  v.

MERCEDES-BENZ USA, LLC,

    Defendant.

Case No. 21-cv-03032-WHO

**ORDER DENYING MOTION TO REMAND AND DENYING MOTION TO COMPEL ARBITRATION**

Re: Dkt. Nos. 6, 15

   Plaintiff Gamil Messih filed this action against defendant Mercedes-Benz USA, LLC ("MBUSA") for breach of warranty claims arising out of a car he purchased from a dealership in Walnut Creek, California. Before me are two motions: Messih's motion to remand for failure to meet the amount in controversy requirement for diversity jurisdiction and MBUSA's motion to compel arbitration based on a provision in the purchase agreement between Messih and the dealership.

   Diversity jurisdiction is proper because MBUSA has sufficiently established, by a preponderance of evidence, that the amount of controversy exceeds $75,000 given Messih's alleged actual damages and civil penalties. MBUSA has failed, however, to establish that it has standing to enforce the arbitration provision between Messih and the dealership as a third-party beneficiary and under the equitable estoppel doctrine. Numerous courts have denied similar motions to compel brought by non-signatory vehicle manufacturers seeking to enforce largely identical arbitration provisions. MBUSA's attempt to distinguish those cases is unpersuasive. For these reasons, Messih's motion to remand and MBUSA's motion to compel arbitration are DENIED.

**BACKGROUND**

On July 20, 2013, Messih purchased a 2014 Mercedes-Benz E350 from dealership Mercedes-Benz of Walnut Creek ("MBWC"). Complaint ("Compl.") [Dkt. No. 1-1] ¶ 8.[1] MBUSA manufactured Messih's vehicle and issued a written warranty. *Id.* ¶¶ 4, 15. Messih alleges that he brought his vehicle to MBUSA's authorized repair facility, MBWC, multiple times between 2013 and 2019 due to a range of malfunctions and defects, including problems with the steering wheel, hood seal, auxiliary battery, and software issues. *Id.* ¶¶ 17–33; *Id.*, Ex. 1 (copy of Mercedes-Benz "Service and Warranty Information 2014"). He contends that MBUSA and its authorized repair facility have failed to repair his vehicle despite multiple opportunities to do so. *Id.* ¶ 34.

On March 24, 2021, Messih filed this action in Contra Costa County Superior Court, asserting the following three causes of action pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*: (i) "Breach of Express Warranty," (ii) "Breach of Implied Warranty," and (iii) "Violation of the Song-Beverly Act – Section 1793.2." *Id.* ¶¶ 36–76. MBUSA subsequently removed the action to this court. Notice of Removal ("NOR") [Dkt. No. 1].

MBUSA contends that the arbitration provision contained in the contract between the dealership MBWC and Messih governs this dispute and moves to compel arbitration and stay this action. Defendant Mercedes-Benz USA, LLC's Motion to Compel Arbitration [Dkt. No. 6]. Messih opposes the motion to compel arbitration and separately moves to remand the action to state court. Motion to Remand to Contra Costa County Superior Court [Dkt. No. 15].

**LEGAL STANDARD**

**I.    MOTION TO REMAND**

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). The

---

[1] MBUSA's request for judicial notice of the Complaint, although unnecessary given that the Complaint it part of case docket, is GRANTED. *See* Request for Judicial Notice in Support of Defendant's Motion to Compel Binding Arbitration [Dkt. No. 7].

district court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. §

1447(c). The removal statutes are construed restrictively, and the district court must remand the

case if it appears before final judgment that the court lacks subject matter jurisdiction. *Shamrock*

*Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). The burden of

establishing federal jurisdiction is on the removing party. *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994).

## II.       MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. §§ 1

*et seq.* The FAA "reflect[s] both a 'liberal federal policy favoring arbitration,' and the

'fundamental principle that arbitration is a matter of contract.'" *AT & T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011). The court's role is to decide: "(1) whether there is an

agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The party seeking to compel

arbitration must prove both counts by a preponderance of the evidence. *Knutson v. Sirius XM*

*Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). The scope of an arbitration agreement is governed

by federal substantive law. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294

(9th Cir. 1994). "If the response is affirmative on both counts, then the Act requires the court to

enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic*

*Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." *Id.* at 1131.

### DISCUSSION

## I.       EVIDENTIARY ISSUES

As a preliminary matter, I address Messih's challenge to MBUSA's introduction of the

purchase agreement that Messih and MBWC, the dealership, signed at the time of purchase—the

"Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)"

("RISC"). The RISC is pertinent to both motions before me. It contains the arbitration provision

that MBUSA seeks to enforce and the monetary amounts it uses to establish amount in

controversy for diversity jurisdiction.

3

MBUSA originally submitted the RISC with a declaration from its attorney. Declaration of Soheyl Tahsildoost in Support of Motion to Compel Arbitration ("Tahsildoost Decl.") [Dkt. No. 6-1], Ex. 2. Messih objected for lack of personal knowledge and foundation. Plaintiff's Evidentiary Objections [Dkt. No. 16-1].[2] MBUSA then submitted the same exhibit with a declaration from Taryn T. Dillon. Declaration of Taryn T. Dillon in Support of Motion to Compel Arbitration ("Dillon Decl.") [Dkt. No. 18-1], Ex. 3.

Dillon testifies that he is "the Controller at Mercedes Benz Walnut Creek" and is "familiar with [the] sales of Mercedes-Benz vehicles, including the related processes, procedures, record-creation and record-keeping procedures." *Id.* ¶¶ 1–2. He contends that the RISC "is stored by Mercedes Benz Walnut Creek in an electronic file containing all of the documents related to the subject transaction. The [RISC] was made at or near the time of the sale of the Subject Vehicle; it was made by or from information transmitted to or from sales personnel with knowledge of the sales transaction; it has been kept in the ordinary course of business; and it is the regular practice of Mercedes Benz Walnut Creek to make such records." *Id.* ¶ 3. Messih objects again, this time on grounds that the RISC appears to be unsigned or have only the trace of a signature that could not possibly be identified. Plaintiff's Evidentiary Objections to Defendants' Reply Evidence [Dkt. No 19]. He also argues that I should decline to consider new evidence or arguments raised in reply. *Id.*

The RISC is not new evidence because MBUSA submitted it with its motion and only re-submitted with its reply after Messih raised evidentiary objections to its authenticity. While the signatures on the RISC are not completely clear, that is not enough to defeat authenticity. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

---

[2] Messih argues that MBUSA should be collaterally estopped from disputing that an attorney declaration is sufficient to authenticate a purchase agreement because it lost the same issue in *Hervey v. MBUSA*, Los Angeles Superior Court, Case No. 20STCV03490. His request for judicial notice of the *Hervey* decision, which MBUSA does not oppose, is GRANTED. *See* Plaintiff's Request for Judicial Notice in Opposition to Motion to Compel Arbitration ("Pls. RJN") [Dkt. No. 17], Ex. 5. But the doctrine of collateral estoppel does not apply here because this case does not involve the same claims or same arbitration agreement as in *Hervey*. And, as discussed above, MBUSA has provided another non-attorney declaration that suffices for authentication purposes.

Fed. R. Evid. 901(a). "The burden to authenticate under Rule 901 is not high." *Safley v. BMW of N. Am., LLC*, No. 20-CV-00366-BAS-MDD, 2021 WL 409722, at *3 (S.D. Cal. Feb. 5, 2021) (quoting *United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018)).

For example, the defendant in *Safley* authenticated a purchase agreement with a declaration from an employee of BMW Financial Services, NA, LLC, ("BMW FS"), who "worked for BMW for four years, where he is able to access BMW FS' documents, including files related to retail installment contracts to BMW FS by dealers." *Id.* (internal quotation marks omitted). Based on his experience working for BMW FS, he testified that he was familiar with BMW FS' record keeping, document preparation, and record retention policies and practices. *Id.* He also declared until penalty of perjury that the purchase agreement attached to his declaration is a true and correct copy of the agreement. *Id.* The court overruled the plaintiffs' evidentiary objection, finding the defendant met "its low burden to authenticate the Sale Contract, and because Plaintiffs [did] not submit any evidence challenging the document's authenticity." *Id.*

Similarly here, Dillon testifies that he is an employee at the dealership who is familiar with the recordkeeping policies and declares under penalty of perjury that the RISC attached to his declaration is "a true and correct copy" of the RISC "signed by Plaintiff and a representative of Mercedes Benz Walnut Creek for the purchase of the Subject Vehicle." Dillon Decl. ¶ 3. The RISC also contains "sufficient indicia that, taken in conjunction with the circumstances of its production from [the declarant's] employer, support Defendant's claim that the agreement is what it purports to be." *Safley*, 2021 WL 409722, at *3. That is enough for MBUSA to meet is "low" burden to authenticate the RISC. *Id.* Messih's objection is OVERRULED.

## II. MOTION TO REMAND

Messih moves to remand on grounds that MBUSA failed to establish the amount in controversy requirement for removal based on diversity jurisdiction. The amount in controversy is the only dispute between the parties. The parties do not dispute that complete diversity exists.

### A. Amount in Controversy

If a defendant removes a case from state court to federal court, the defendant bears the burden of proving that the amount in controversy is satisfied. *See Chajon v. Ford Motor Co.*, No.

18-10533 RGK, 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019). The allegations in the complaint dictate the defendant's burden. When a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, the amount in controversy requirement is presumptively satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996). On the other hand, if a plaintiff's state-court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing by a "preponderance of the evidence" that it is "more likely than not" that the amount in controversy exceeds $75,000. *Id.* at 404; *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

There is only one paragraph in the Complaint that contains monetary amounts relevant to the amount in controversy calculation:

> On July 20, 2013, Plaintiff purchased a new 2014 Mercedes-Benz E350, VIN: WDDHF5KB3EA803096 ("Vehicle") from Mercedes-Benz of Walnut Creek ("MBWC") in Walnut Creek, California. The Vehicle's odometer at purchase read 19 miles. Plaintiff paid $20,000.00 as a down payment on the Vehicle. Plaintiff purchased three optional MBUSA service contracts when he purchased the Vehicle: a $3,2900.00 "MB Service Contract" plan with a duration of 84 months or 75,000 miles, a $1,094.00 "MB PPM" prepaid maintenance plan with a duration of 36 months or 30,000 miles, and a $654.00 "Ding/Dent Shield" plan with a duration of 60 months. The total amount that Plaintiff financed was $46,646.42. Including interest over the maturity of the loan through August 2018, Plaintiff paid $49,662.70. The total sales price of the Vehicle, including the down payment, was $69,662.70. The cash price of the Vehicle was $56,146.50.

Compl. ¶ 8. The Prayer for Relief lists various requests for damages without specifying estimated amounts of damages sought. *See id.*, Prayer for Relief (seeking, among other things, "special and actual damages according to proof at trial," "incidental and consequential damages according to proof at trial," "civil penalty in the amount of two times Plaintiff's actual, incidental, and consequential damages," and "attorneys' fees"). Because the amount in controversy is unclear from the face of the Complaint, MBUSA must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. I find that it has based on Messih's alleged actual damages and civil penalties alone.

6

### 1.    Actual Damages

California Civil Code section1793.2(d)(2)(B) provides that the measure of damages in an action such as this one includes restitution in "an amount equal to the actual price paid or payable by the buyer, . . . including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees[.]"  Cal. Civ. Code § 1793.2(d)(2)(B).  Section 1793.2(d)(2)(C) permits the manufacturer to reduce the amount payable to the buyer "by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(C).

MBUSA contends that the total cash price listed in the RISC, $56,146.50 (and as restated in the Complaint), demonstrates "the price paid or payable" for the subject vehicle.  *See* Compl. ¶ 8; RISC at 1.  Messih challenges MBUSA's method of measuring his actual damages based on total cash price.  Courts, however, have found total cash price appropriate in calculating actual damages sought under the Song-Beverly Act.  *See, e.g.*, *Alvarado v. FCA US, LLC*, No. EDCV17505JGBDTBX, 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017) (finding amount in controversy requirement met where defendants used total cash price from the purchase agreement to calculate actual damages); *Gerber v. FCA US LLC*, No. 17-CV-0518-AJB-BGS, 2017 WL 2705428, at *2 (S.D. Cal. Jun. 23, 2017) ("Given that the statute permits Gerber to recover collateral charges, which FCA did not use in its amount-in-controversy calculation, the Court finds FCA's use of the total cash price conservatively estimates 'the actual price paid or payable by' Gerber.").[3]

---

[3] Messih relies on *D'Amico v. Ford Motor Co.*, No. CV 20-2985-CJC (JCX), 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) to undermine MBUSA's use of the total cash price as the total amount "paid or payable."  *D'Amico* involved restitution for a vehicle that was leased, which made the "'price paid' under the statute [] not the [Manufacturer Suggested Retail Price], but only what Plaintiff has paid under her lease." *D'Amico*, 2020 WL 2614610, at *2 (finding *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002) "squarely concludes that in the context of a lease, the Act's phrase 'actual price paid or payable by the buyer' is 'limit[ed] . . . to payments actually made'").  Unlike *D'Amico*, Messih purchased the subject vehicle, which makes the amount paid or payable the damages he will be seeking.  Messih's reliance on *Ghayaisi v. Subaru of Am., Inc.*, No. 2:20-CV-00467-RGK-SK, 2020 WL 1140451, at *1 (C.D. Cal. Mar. 6, 2020) is misplaced for the same reason because that case involved a lease agreement and the court applied *Brady* to conclude that defendant "present[ed] no facts regarding how many payments were actually made on the installment contract."

As noted above, the restitution awardable under section 1793.2(d)(2)(B) must also be reduced by the amount directly attributable to Messih's use of the vehicle prior to the first repair or attempted repair. This set-off amount is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the problem. Cal. Civ. Code § 1793.2(d)(2)(C).

Although MBUSA did not calculate a mileage offset reduction in its NOR, the calculation it provides in opposition to Messih's motion to remand is sufficient. MBUSA calculates a mileage offset of $5,673.14 as follows: 12,125/120,000 x $56,146.50. The 12,125 mileage figure is based on Messih's allegation that he took his vehicle for a steering wheel repair on August 2, 2014, with 12,144 miles on the odometer at the time of presentation, minus the 19 miles on the odometer when Messih purchased the vehicle. Compl. ¶¶ 8, 19. In addition to the $5,673.14 mileage offset, MBUSA also deducts the three optional service contracts included in Messih's purchase of the vehicle  (i) the "MB Service Contract" in the amount of $3,290; (ii) the "MB PPM Agreement" in the amount of $1,094; and (iii) the "Ding/Dent Shield Agreement" in the amount of $654. *Id.* ¶ 8. The sum of all deductions and offsets totals $10,711.14. Subtracting $10,711.14 from $56,146.50 (total cash price) yields $45,435.36, which MBUSA contends would be Messih's actual damages should every statutory offset and deduction be taken into account.

Messih does not rebut this evidence or indicate what the appropriate mileage offset should be. He only faults MBUSA for failing to calculate milage offset earlier in its NOR, but raises no argument that would undermine the mileage offset calculation MBUSA eventually provided in its briefing. The cases Messih relies on are inapposite because defendants in those cases either failed to provide a mileage offset calculation altogether (in either the NOR or briefing) or failed to provide a proper milage offset calculation. *See Mullin v. FCA US, LLC*, No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020) (remanding case because defendants failed to take into account the mileage offset, where they "could have submitted their own evidence in order to calculate the mileage offset" but failed to do so); *Chavez v. FCA US LLC*, No.

8

219CV06003ODWGJSX, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) (finding defendant's mileage offset calculation was flawed); *see also Cox v. Kia Motors Am., Inc.*, No. 20-CV-02380-BLF, 2020 WL 5814518, at *4 (N.D. Cal. Sept. 30, 2020) ("Because Kia has failed to account for the mileage offset, it has failed to establish either the amount of actual damages or the maximum recoverable civil penalties, calculated as twice actual damages."); *Young Lee v. Mercedes-Benz USA, LLC*, No. CV210641FMOJEMX, 2021 WL 274731, at *2 (C.D. Cal. Jan. 27, 2021) (finding defendants failed to meet its burden with respect to amount in controversy "based on the amount of the subject vehicle and plaintiff's request for civil penalties" because "defendant fail[ed] to take into account any reduction for the use of the vehicle") (citing cases).

In this case, MBUSA's submissions are sufficient to establish by a preponderance of evidence that Messih's Song-Beverly Act actual damages are, after taking mileage offset and other deductions into account, at least $45,435.36.

### 2.     Civil Penalties

Messih seeks civil penalties "in the amount of two times Plaintiff's actual, incidental, and consequential damages." Compl., Prayer for Relief ¶ 5. Without taking into account the claimed incidental and consequential damages, MBUSA calculates that a maximum civil penalty award would be $90,906.72 (2 x $45,435.36).

As the Hon. Beth L. Freeman recognized in *Verastegui v. Ford Motor Co.*, No. 19-CV-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020), "courts in this district have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy." *Compare Makol v. Jaguar Land Rover N. Am., LLC*, No. 18-CV-03414-NC, 2018 WL 3194424, at *3 (N.D. Cal. Jun. 28, 2018) ("Simply assuming a civil penalty award is inconsistent with the principle that the defendants must provide evidence that it is more likely than not that the amount in controversy requirement is satisfied.") (citation omitted) *with Neville v. W. Recreational Vehicles, Inc.*, No. C-07-3757-MMC, 2007 WL 4197414, at *2 (N.D. Cal. Nov. 21, 2007) ("The Song-Beverly penalty of twice the actual damages therefore pushes the amount in controversy to well over the [statutory minimum]."); *Covarrubias v. Ford Motor Co.*, No. 19-CV-01832-EMC, 2019 WL 2866046, at *6 (N.D. Cal. Jul. 3, 2019); *Bernstein v. BMW of N. Am., LLC*,

No. 18-CV-01801-JSC, 2018 WL 2210683, at *2 (N.D. Cal. May 15, 2018) ("Two times

Plaintiff's $25,000 valuation is $50,000 which totals $75,000 exclusive of attorney's fees.").  Like

Judge Freeman, I am "persuaded by the decisions in which courts have considered the maximum

recoverable civil penalties because that is what Plaintiff put in controversy."  *Cox v. FCA US LLC*,

No. 20-CV-03808-WHO, 2020 WL 5046103, at *2 (N.D. Cal. Aug. 24, 2020) (quoting

*Verastegui*, 2020 WL 598516, at *3) (denying motion to remand where defendant established that

the amount in controversy exceeds $75,000 by a preponderance of evidence based on the invoice

price of the vehicle, less mileage offset, and adding maximum recoverable civil penalties).

MBUSA has sufficiently established that the actual damages at issue here is $45,435.36

based on the total cash price and with the mileage offset and other deductions.  MBUSA has thus

sufficiently established the total civil penalties amount, $90,906.72, to include in the amount in

controversy

### 3.    Attorneys' Fees

Messih seeks attorneys' fees pursuant to Civil Code section 1794, subdivision (d).  Compl.,

Prayer ¶ 7.  The Ninth Circuit recently explained that "when a statute or contract provides for the

recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the

amount in controversy."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)

(citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)).  Thus,

attorneys' fees may be included in the amount in controversy if, as here, they are recoverable by

statute.

Notwithstanding the Ninth Circuit's guidance, Messih argues that attorneys' fees should

not be considered in determining the amount in controversy for jurisdictional purposes.  The series

of decisions that he relies on for this proposition, mostly out of the Central District of California,

are unpersuasive.  *See Cox v. Kia Motors Am., Inc.*, No. 20-CV-02380-BLF, 2020 WL 5814518, at

*4 (N.D. Cal. Sept. 30, 2020) (finding *Yegan v. Ford Motor Co.*, 2019 WL 7374627 (C.D. Cal.

Apr. 18, 2019) and *Nevarez v. FCA US LLC*, 2020 WL 2394935 (C.D. Cal. May 12, 2020) "are

contrary to *Fritsch*, in which the Ninth Circuit expressly rejected arguments 'that future attorneys'

fees should not be included in the amount in controversy because they are inherently speculative

10

and can be avoided by the defendant's decision to settle an action quickly'") (quoting *Fritsch*, 889 F.3d at 795); *see also id.* (finding *Chavez*, 2020 WL 468909, at *2 and other cases "are contrary to numerous Ninth Circuit and district court cases holding that attorneys' fees are included in the amount in controversy in MMWA and Song-Beverly suits") (citing cases). I, along with other judges in this District, consider attorneys' fees in the amount of controversy analysis. *See Cox v. FCA US LLC*, 2020 WL 5046103, at *2.

That said, I need not consider MBUSA's $36,000 estimate of attorneys' fees, to which Messih objects, "because once actual damages and civil penalties are added (as well as attorneys' fees in any amount) the total amount in controversy exceeds $75,000." *Verastegui*, 2020 WL 598516, at *4.[4]

Because MBUSA has established both the diversity and amount in controversy prerequisites to invoking subject matter jurisdiction under 28 U.S.C. § 1332(a), Messih's motion to remand is DENIED.

## III.  MOTION TO COMPEL ARBITRATION

MBUSA contends that Messih's claims are governed by an arbitration clause contained in the RISC between Messih and MBWC, which states, in relevant part:

> 1.  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
>
> [omitted]
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

RISC at 6.

---

[4] MBUSA's request for judicial notice of the attorney fee awards Messih's counsel has been awarded in other cases is DENIED given that I need not consider the estimated attorneys' fees to find that the amount in controversy requirement is met. *See* Defendant's Request for Judicial Notice in Support of Opposition to Plaintiff's Motion to Remand [Dkt. No. 21].

## A.    Arbitrability

Before addressing whether MBUSA has standing to enforce the arbitration agreement as a non-signatory, I address the threshold arbitrability argument raised by MBUSA for the first time at the end of its reply brief.  MBUSA argues that the question of whether it can compel arbitration must be answered by an arbitrator, not a court, because the arbitration clause states that questions of arbitrability shall be decided by an arbitrator.

The issue of arbitrability is for the court to decide unless the parties' agreement clearly and unmistakably provides otherwise.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  In *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126–27 (9th Cir. 2013), *cert. denied,* 571 U.S. 818 (2013), the Ninth Circuit addressed whether a defendant manufacturer could compel a group of buyer plaintiffs to arbitrate based on purchase agreements that were signed by the plaintiffs and their respective dealerships, but not the manufacturer.  Like here, the dealerships were not parties to the lawsuit.  *Id.* at 1127.  The manufacturer argued that because the purchase agreements provided that arbitrators shall decide issues of interpretation, scope, and applicability of the arbitration clauses, the arbitrators should decide the issue of arbitrability.  *Id.*

The Ninth Circuit held that the district court could decide issues of arbitrability because the "you and us" language in the arbitration clauses evidenced the plaintiffs' intent to arbitrate disputes with the dealerships, but not the manufacturer.  *Id.* at 1128. The court reasoned, "[i]n the absence of a disagreement between Plaintiffs and the Dealerships, the agreement to arbitrate arbitrability does not apply."  *Id.*  It also stated, "[g]iven the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute [was] arbitrable."  *Id.* at 1127.

*Qi Ling Guan v. BMW of N. Am., LLC*, No. 20-CV-05025-MMC, 2021 WL 148202, at *1 (N.D. Cal. Jan. 15, 2021), similarly found no "clear and unmistakable evidence" that the provision delegated the threshold question of whether a party is entitled to enforce to the arbitrator given that the provision contained "language limiting its terms to claims or disputes between Guan and the Dealer or the Dealer's 'employees, agents, successors or assigns.'"  *See also Kim v. BMW of N. Am., LLC*, 408 F. Supp. 3d 1155, 1158 (C.D. Cal. 2019) (finding that whether BMW, as a

12

nonsignatory, can be bound by an arbitration clause "is not a question for the arbitrator"); *Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 969 (S.D. Cal. 2020) (arbitration clause of purchase agreement into which purchaser entered with dealership did not require that question of whether manufacturer could compel arbitration be answered by arbitrator).

The RISC here contains the same limiting "you and us" language as in *Qi Ling Guan*, *Kim*, and *Jurosky*. *See* RISC at 6 (limiting "any claim or dispute" to those "between you and us or our employees, agents, successors or assigns"). "Because no dispute currently exists between [Messih] and the dealership, and because there is no clear and unmistakable evidence indicating otherwise, the issue of whether the instant dispute is arbitrable given [MBUSA's] status as a nonsignatory need not be decided by an arbitrator." *Jurosky*, 441 F. Supp. 3d at 968.

## B. Enforcement by Non-Signatory

MBUSA argues that it has standing to compel arbitration as a third-party beneficiary and under a theory of equitable estoppel. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) (holding a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement).

This is not the first case of its kind. Car manufacturers routinely seek to enforce the arbitration clause in a purchase agreement with the dealership. Courts have reached different outcomes depending on the language of those clauses. I join the weight of authority, including from this District, that have denied motions to compel based on virtually identical arbitration provisions as the one at issue in this case and that have rejected the same arguments MBUSA raises here. *See, e.g.*, *Qi Ling Guan*, 2021 WL 148202, at *2 (acknowledging "a split of authority as to whether a vehicle manufacturer can enforce such an arbitration provision on the basis of equitable estoppel or as a third-party beneficiary," but "find[ing] more persuasive the reasoning of the decisions addressing essentially the same arguments raised here by BMW and finding the manufacturer cannot enforce the provision"); *Pestarino v. Ford Motor Co.*, No. 19-CV-07890-BLF, 2020 WL 3187370, at *1 (N.D. Cal. Jun. 15, 2020) (holding manufacturer could not enforce arbitration provision on the basis of equitable estoppel); *Schulz v. BMW of N. Am., LLC*, 472 F. Supp. 3d 632, 641 (N.D. Cal. 2020) (finding manufacturer lacked standing to enforce the

13

arbitration agreement between purchaser and the dealership because equitable estoppel and third-party beneficiary doctrines did not apply); *Safley*, 2021 WL 409722, at *8 (same); *Jurosky*, 441 F. Supp. 3d at 969–75 (same); *Kim*, 408 F. Supp. 3d at 1158–60 (same).[5]

### 1. Third-Party Beneficiary

California law allows a third party to enforce a contract made "expressly for the benefit" of that third party. Cal. Civ. Code § 1559. A third party need not be named in the contract, but needs to be "more than incidentally benefitted by the contract" to qualify as a third-party beneficiary. *Vincent v. BMW of N. Am., LLC*, No. 19-6439 AS, 2019 WL 8013093, at *5 (C.D. Cal. Nov. 26, 2019) (citing *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978)). The contract has to be formed with the intent to benefit the third party specifically. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017).

Messih cites *Safley*, 2021 WL 409722, at *5, as an example of a recent case that rejected the very arguments made by MBUSA and that involved an identical arbitration provision. The *Safley* court focused on the "you and us" language ("between you and us or our employees, agents, successors or assigns"), distinguishing it from the broader arbitration language at issue in *Saponjic v. BMW of N. Am., LLC*, No. 20-cv-703-BAS-RBB, 2020 WL 4015671, at *2 (S.D. Cal. Jul. 16, 2020), which covered claims against the dealership's "officers, directors, *affiliates*, successors, or assigns." *Id.* (emphasis added). "Defendant could enforce the *Saponjic* arbitration provision as a third-party beneficiary because the agreement encompassed claims against the lessor's assignee's 'affiliates.'" *Id.* By contrast, the arbitration provision in *Safley*, like the arbitration provision here, did not mention "affiliates" and only covered claims "between you [the Safleys] and us [BMW Encinitas] or our employees, agents, successors, or assigns." *Id.* The *Safley* court was "unconvinced that this narrower contract covers Defendant as a third-party beneficiary," because "Defendant does not demonstrate that it falls under one of the categories of third parties identified in the arbitration provision's claim coverage: the dealership's 'employees, agents, successors, or

---

[5] Messih requests judicial notice of the *Safley* opinion, the underlying arbitration agreement at issue in *Safley*, and the underlying arbitration agreements at issue in the *Kramer*. *See* Pls. RJN, Exs. 1–4. Messih's request, which MBUSA does not oppose, is GRANTED.

assigns.'" *Id.* at *6.  Messih similarly argues that MBUSA does not and cannot assert that it is MBWC's employee, agent, successor or assign.

MBUSA distinguishes *Safley* on grounds that it only dealt with the question of assignment and affiliates and did not speak to the other language in the arbitration provision.  It cites to the latter part of the arbitration provision, which states that the provision encompasses any claim or dispute "which arises out of or relates to . . . *condition* of this vehicle, this contract or any *resulting* transaction or relationship (including any such relationship with *third parties* who do not sign this contract)."  RISC at 6 (emphasis added).  Other courts have considered the same language and still found that the third-party beneficiary doctrine does not apply.

The Hon. Nathanael M. Cousins' opinion in *Schulz v. BMW of N. Am., LLC*, 472 F. Supp. 3d 632 (N.D. Cal. 2020) explains why.  With respect to the "condition of the vehicle" language, Magistrate Judge Cousins found that the signatories expressly limited their agreement to arbitrate disputes "between you and us or employees, agents, successors, or assigns" and "[w]hile the provision encompasses disputes that arise out of or relate to the condition of the vehicle," "it did not extend to disputes against third parties, especially because the signatories had to elect to exercise the right."  *Id.* at 640.  With respect to the "relationship with third parties" language, he found that the "clause refers to the subject matter of the dispute, not to the parties involved in the dispute."  *Id.* at 640–41; *see also Jurosky*, 441 F. Supp. 3d at 975 ("The only language cited by BMW in support of its third party beneficiary status is the language concerning the condition of the vehicle and relationships with third parties. (Doc. No. 16 at 17.)  As discussed above, this language refers to types of disputes between Plaintiff and the dealership that may be arbitrated, and does not demonstrate an intent to confer some direct benefit on BMW.").

*Schulz* and *Jurosky* are on point and MBUSA makes no attempt to undermine the persuasive reasoning in those cases.  The "condition of this vehicle" and "relationship with third parties" language in the arbitration provision here defines arbitrable disputes, but regardless of the matter of dispute, the arbitration provision expressly limits, in the preceding sentence, application to disputes between Messih and the dealership or its "employees, agents, successors, or assigns." RISC at 6.  Accordingly, I find that MBUSA may not enforce the arbitration provision as a third-

party beneficiary because it fails to show that the RISC was made expressly for its benefit and that it was more than incidentally benefitted by the RISC.

### 2. Equitable Estoppel

"Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128–29 (internal citations, alternations, and quotation marks omitted). The first circumstance, which MBUSA invokes here, "applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant." *Id.* at 1129; *see also Jones v. Jacobson*, 195 Cal. App. 4th 1, 20 (2011), *as modified* (Jun. 1, 2011). "[M]erely 'mak[ing] reference to' an agreement with an arbitration clause is not enough. Equitable estoppel applies 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.'" *Kramer*, 705 F.3d at 1129 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 218 (2009)).

The car manufacturer in *Kramer*, like MBUSA, argued that the plaintiffs' claims are intertwined with the purchase agreements "because they rely upon the existence of Plaintiff's vehicle purchase transactions." 703 F.3d at 1129. The Ninth Circuit rejected that argument and affirmed the district court's holding that the equitable estoppel doctrine did not apply. *Id.* None of the plaintiffs' claims were intertwined with their purchase agreements with the dealers, nor did they reference or rely upon them. *Id.* at 1129–31.

MBUSA distinguishes *Kramer* on grounds that it involved different claims premised on California consumer law, unfair competition, false advertising, breach of the implied warranty of merchantability, and breach of contract instead of the Song-Berverly Act. It also points out the that

16

the contracts in *Kramer* did not contain language that could be construed as extending the scope of arbitration to third parties, such as arbitrating "claims related to the condition of the vehicle," including claims or disputes "which arise out of . . . relationships with third parties." RISC at 6.

MBUSA argues that I should instead consider the reasoning in *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020), *review denied* (Nov. 24, 2020). There, the plaintiffs purchased a used vehicle from a dealer, and when the vehicle turned out to be defective, they sued both the dealer and the manufacturer. 53 Cal. App. 5th at 489. The dealer moved to compel arbitration under an arbitration provision that is virtually identical to the one in this case and the manufacturer filed a notice of non-opposition. The trial court compelled the plaintiffs to arbitrate their claims against both the dealer and the manufacturer. *Id.* at 491. The California Court of Appeal affirmed, finding, in relevant part, that the plaintiffs were compelled to arbitrate their claims against the manufacturer "because the [plaintiffs] expressly agreed to arbitrate claims arising out of the condition of the vehicle—even against third party nonsignatories to the sales contract." *Id.* at 497.

At least two California district courts have since analyzed *Felisilda* in cases like this one and found it inapplicable in light of the Ninth Circuit's ruling in *Kramer*. In *Ruderman v. Rolls Royce Motor Cars, LLC*, No. 220CV04529JWHRAOX, 2021 WL 141179, at *4 (C.D. Cal. Jan. 7, 2021), the court found "*Felisilda* is not directly on point, because the Felisildas sued both the manufacturer *and* the dealer," whereas the plaintiff before it, like Messih, sued only the manufacturer. *Id.* (emphasis in original). The court concluded: "*Felisilda*, therefore, does not change state law that directly controls this case. *Kramer* remains the controlling precedent for this case. Under the *Kramer* line of cases, Rolls-Royce cannot compel Ruderman to arbitrate his claims against it under the doctrine of equitable estoppel." *Id.*

*Safley*, which involved a virtually identical arbitration clause as the one at issue here, followed *Ruderman*'s analysis and found *Felisilda* inapplicable in light of the Ninth Circuit's ruling in *Kramer*:

> As the *Felisilda* court highlighted, the arbitration provision mentions claims regarding the "condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." (Sales Contract 2.) But that language is only one part of the definition of a covered claim.

17

> The arbitration provision first defines claims as those "between you and us or our employees, agents, successors or assigns." (Sale Contract at 2.) Neither the dealership nor one of its "employees, agents, successors, or assigns" is named in this lawsuit or seeking to enforce the arbitration provision. *See supra* Part III.A. Thus, the Court similarly finds *Felisilda* to be distinguishable. The reasoning in *Kramer* and *Jurosky* convincingly addresses these circumstances. Consequently, the Court finds Defendant is not entitled to enforce the Sale Contract's arbitration provision under the equitable estoppel doctrine.

*Safley*, 2021 WL 409722, at *8.

The reasoning in *Ruderman* and *Safley* holds here. While *Felisilda* had a similar arbitration clause, it involved *both* the manufacturer and the signatory dealer that had standing to enforce the arbitration clause. *Felisilda* also brushed over the restrictive "you and us" language at the beginning of the arbitration clause, which limits the scope of the subsequent "condition" and "third-party" language. As the law stands now, *Kramer* remains the controlling precedent for this case.[6]

The Complaint here only references the RISC in describing when the subject vehicle was purchased and for how much. *See* Compl. ¶ 8. This "mere[] reference" to the RISC is not enough for the equitable estoppel doctrine to apply. *Kramer*, 705 F.3d at 1129. The Complaint does not allege any duty, obligation, term, or condition imposed by the RISC that MBUSA breached such that the claims can be considered "intimately founded" with the RISC. *Id.* at 1130. Rather, the claims arise from the warranties issued separately by MBUSA. *See* Compl. ¶ 9 & Ex. 1 (copy of Mercedes-Benz "Service and Warranty Information 2014").

The RISC itself expressly differentiates MBUSA's warranty from the dealership's warranties in a section titled "Warranties Seller Disclaims," stating:

> If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for

---

[6] The *Safley* court recognized that "this area of law is uncertain" as "[t]here are at least several appeals pending before the Ninth Circuit involving the applicability of *Kramer* to comparable arbitration provisions," and offered to revisit the issue if there is an intervening change in controlling law. 2021 WL 409722, at *8 n.5; *see Ruderman v. Rolls Royce Motor Cars NA, LLC*, No. 21-55068 (9th Cir. filed Jan. 26, 2021); *Ellington v. Eclipse Recreational Vehicles*, No. 21-55022 (9th Cir. filed Jan. 8, 2021); *In re: liaison Counsel for Plaintiffs v. Ford Motor Co.*, No. 55780 (9th Cir. filed Jul. 31, 2020).

a particular purpose.
*This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.* If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

RISC at 5 (emphasis added). "This differentiation does not support the interrelatedness of the dealership's purchase agreement and [MBUSA's] warranties. Instead, it demonstrates an intent to distinguish and distance the dealership's purchase agreement from any warranty that [MBUSA] 'may' provide." *Jurosky*, 441 F. Supp. 3d at 970 (citing *Kramer*, 705 F.3d at 1131); *see also Schulz*, 472 F. Supp. 3d at 640 (finding identical purchase agreement "does not impose any warranty obligations on either the dealership or [the manufacturer]" because "[l]ike the agreement in *Kramer*, the purchase agreement here merely disclaims, 'the seller makes no warranties,' and that '[t]his provision does not affect any warranties covering the vehicle the manufacturer may provide'."). Thus, the warranties necessary for Messih's claims originate from MBUSA with the purchase of the car, not from the terms contained in the RISC. *See Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 956 (N.D. Cal. 2012) ("[T]he plaintiffs' [breach of warranty] claims cannot rely on the Installment Sale Contract, but must rely on warranties issued by [the manufacturer].").

MBUSA's argument that Messih would have no claims under the Song-Berverly Act "but for" the existence of the sale transaction, which was created by and through the RISC, fails. MBUSA raised a similar "but for" argument in another case, *Friedman v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF (CWX), 2013 WL 12086785, at *13 (C.D. Cal. Jan. 31, 2013), where it sought to enforce an arbitration provision in a lease agreement between the plaintiff and the dealership. The court denied MBUSA's motion to compel arbitration, finding that "those cases that apply a 'but for' test have failed to appreciate [the Ninth Circuit's] admonition that the two situations giving rise to arbitration through 'equitable estoppel' establish very narrow circumstances in which claims of nonsignatories can be arbitrated." *Id.* (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009)); *see id.* at *12 n.7 (noting that the Ninth Circuit in *Kramer* "reiterated its commitment to *Mundi*'s holding"). The court concluded that "[w]hile it is true that, but for the fact that they leased a Mercedes vehicle Plaintiffs would not have standing to pursue a claim against Mercedes, *Mundi* suggests that such a 'benefit' derived

19

from the lease falls short of the kind of conduct giving rise to equitable estoppel." *Id.* at *13.[7]

MBUSA's reliance on *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147 (N.D. Cal. 2012) fares no better. The *Mance* court granted MBUSA's motion to compel arbitration under the equitable estoppel doctrine, finding MBUSA's "duty to comply with its warranty arose only when Mance bought the car," and that "[h]ad he not signed the contract, he would not have received the warranty from Mercedes-Benz." *Id.* at 1157. *Mance* was decided before the Ninth Circuit's decision in *Kramer* and "it is contrary to the weight of district court decisions after *Kramer*" that have "found the doctrine of equitable estoppel inapplicable to the circumstances presented in this case." *Pestarino v. Ford Motor Co.*, No. 19-CV-07890-BLF, 2020 WL 3187370, at *4 (N.D. Cal. Jun. 15, 2020); *see also Jurosky*, 441 F. Supp. 3d at 974 (finding "the Ninth Circuit's decision in *Kramer* rejected the district court's reasoning in *Mance*, and even if it did not, *Mance* is not sufficiently persuasive") (citing cases).

In sum, Messih's claims do not rely on the RISC and are not intimately founded in and intertwined with the RISC. The inequities that the doctrine of equitable estoppel is designed to address are not present here because Messih does not "seek to simultaneously invoke the duties and obligations of [MBUSA] under the [RISC], as it has none, while seeking to avoid arbitration." *Kramer*, 705 F.3d at 1134.

MBUSA lacks standing to enforce the arbitration agreement between Messih and the dealership because equitable estoppel and third-party beneficiary doctrines do not apply. For these reasons, MBUSA's motion to compel is DENIED.[8]

---

[7] Messih argues that MBUSA should be collaterally estopped from arguing that it is entitled to invoke the equitable estoppel doctrine because it lost the argument in *Friedman*. While the issue raised in this case is similar to the one raised in *Friedman*, they are not so "identical" that collateral estoppel applies. *Friedman* involved an arbitration provision in a lease agreement that differs from the provision at issue here. That said, *Friedman* remains persuasive authority to the extent discussed above.

[8] In his opposition, Messih alternatively argues that the arbitration provision in the RISC is unenforceable because it violates public policy. Because I find MBUSA does not have standing to enforce the arbitration provision, I need not determine whether the arbitration provision itself is valid and enforceable.

**CONCLUSION**

Messih's motion to remand is DENIED and MBUSA's motion to compel arbitration is DENIED. A Case Management Conference is set for August 17, 2021 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: June 24, 2021

William H. Orrick
United States District Judge